Case number 09-1849, consolidated with 09-3551, Mary Doe v. Planned Parenthood. Counsel? Good morning, Your Honor. Good morning. Harold Cassidy for the Plaintiff's Defendant. May I reserve two minutes for rebuttal? Sure. Thank you. Let me begin by talking a little bit about the Court's error with respect to dismissing the informed consent claim as it related to the wrongful death action. Number one, what the Court, the most fundamental error the Court made is it confused the question of law of whether a physician has a duty to disclose in scope of the duty, which is clearly civil. I mean, that question is, yes, the doctor has to disclose the nature of the procedure. The doctor has to disclose the medical risks. Let me stop you right there. Sure. Because when you're talking about disclosing the nature of the procedure, the case law talks about material risks involved in the procedure itself. You have to disclose what those material risks are, and you have to get a consent once the person understands what those material risks are. In this case, is there really any question what the procedure is about? Yes. Why? And, you know, as one who has been consulted by literally thousands of women who have had the procedure, there is a fundamental error. Well, let's be very fundamental about it. She goes into Planned Parenthood knowing that she missed her menstrual cycle. In fact, she went to a prior pregnancy health center and, I believe, was confirmed that she was, in fact, pregnant. And at the pregnancy health center, they told her that what she had inside her was a human being, certainly the start of one. And at Planned Parenthood, they told her the contrary information. So she had basically the entire universe of information that was available to her, and she had to choose which of the two she wanted to put her faith in. If there is no claim in this case, if the court is prepared to say that, as a matter of fact, there is no distinction between a woman understanding that termination of a pregnancy interrupts a process that ultimately would result in a human being being born, and equate that with knowing that, at this moment, the decision a woman is making is that, by signing that consent, she is authorized in the termination of the life of an existing human being. Well, she's certainly terminating whatever the development of the fetus was at that moment. She certainly understands that, doesn't she? But we can't just – the distinction is enormous. The distinction is the whole case. You can't slough off the distinction. Excuse me. Help me out again. What distinction are you talking about? This particular woman, what she said, and this is not uncommon, what she said is all, if what we were doing with this procedure was preventing an actual human being from coming into existence, I would consent to it. If there was an existing human being in place and it kills a human being, I would not consent to it. So what are you saying, doctors must engage in biology 101, or basically inform people what they otherwise don't know? I think we can't deny that there is something unique about this procedure, because the first question is a social question. It has nothing to do with medicine. A woman is pregnant, and the first question, although she won't speak in these terms, the first social question is, can I and should I and do I want to maintain my relationship with my child, yes or no? And in fact, that's the question she asked herself, and the answer to that question led her to Planned Parenthood. No. The answer to that question would dictate her determination. So she went to Planned Parenthood to get the answer to that question, even though she had the answer from the Pregnancy Help Center that apparently was consistent with what she wanted to hear, but she went to somewhere else. I don't think she wanted to hear it. She certainly heard it. She went for a second opinion. And the duty that we're talking about and the negligence is this defendant. And she actually came out and asked this defendant a very directed question. Is there a human being? They misrepresented the facts. Stop right there. Why do you think that's a misrepresentation of fact? That is a question of fact. Well, why do you think that's a question of fact? What case do you rely on for that? On this record, we have in this record, defendants do not, scientific evidence that supports that conclusion. That's number one. Number two, with respect to a case, I mean, obviously, the en banc panel of the United States Court of Appeals to the Eighth Circuit decided. Well, let's talk about that case. Pardon me? Let's talk about that case. Okay. You're talking about Rounds? We're talking about Rounds. All right. We're familiar with Rounds. And what was Rounds, what did Rounds center on? Rounds centered on the question of is it a truthful, accurate statement to say that abortion. Let's back up a little bit because I thought Rounds centered on the state statute and whether or not that state statute was entitled to deference in the court of law. And if that state statute says something, the court of law has no privilege to find the contrary. That's actually not so. Why? What that case was about was that it is established law under the United States Constitution. Well, you can see that it involves a state statute. And the interpretation of a state statute. Of course there's a state statute. But the contention is. Enter a state statute in this case. But it's irrelevant whether there's a state statute. What there is is there is a common law that says what a physician, a reasonable physician would disclose under these circumstances. That's the issue. The fact that that happened, that one state happened to put it in the statute, is irrelevant to the central question. Is it irrelevant to the legislature of South Dakota or North Dakota to find it necessary to put it in their statute? Actually what the South Dakota statute says is that it is a clarification of the common law. It specifically says so right in the statute. It says we are, unlike Illinois, we are a reasonable patient jurisdiction. And we are now going to write, because people are not doing what they're supposed to do, we are going to write a law that clarifies the common law and we're going to clarify it. That's what they actually did. So they felt the need to clarify that common law. And prior to that passing of that statute, the common law may have been interpreted differently. And let me ask you this question because it seems like I'm just talking here. Can the common law be different in different states? Of course. Of course. Absolutely. So to the extent that that's the common law in South Dakota or North Dakota, the common law in Illinois may be a little different. Actually, it is the same in this regard. Okay. All right. If, as a matter of fact, it's killing a human being. And if, as a matter of fact, the physician doesn't treat you to this question. Who would answer that question? In Rouse, the legislature answered that question. No, they didn't. And to the extent that you want that question answered, maybe you're in the wrong forum. Maybe Springfield is the right forum to be in. Let me have an opportunity to answer that. Sure. Please let me have an opportunity to answer that. What actually happened was the district court there looked at the statute and said the statute was unconstitutional. Why? Because it said it violated the First Amendment and 14th Amendment right of the physician because the statement is not an accurate statement of fact. It's wrong factually. It went up on appeal, and what the Eighth Circuit said is, no, it's not wrong factually. On this record, it's accurate. It was then remanded back to the district court. The record that we had in the district court at that point was even more compelling than what it was previously. I mean, even the defendants themselves admitted, this is a member of the species, the term human being is an accurate and appropriate term to use for a member of the species, homo sapiens. And the district court then entered an order directing that they make this precise disclosure that sets forth the statute. The relevance of that case is that it is a fact question. And so what we have in this case is that we have a court taking the fact question away from the finder of fact. But do you think that burden on the doctor that the district court imposed on remand would have been imposed in the absence of that statute? No. But that's irrelevant to this case. What this case is saying is we have a woman who said, if this is a human being, I will not have this procedure. Tell me if this is accurate or not. They deliberately misled her. She relied on what they had to say. Well, misled her is sort of judgmental, it sounds to me, because it can be a difference of opinion or certainly it can be a different application of existing law because abortions are legal. It is. It has nothing to do with whether it's legal. Of course it's legal. But that doesn't mean people can take uninformed consents or take involuntary consents.  The consent has to be voluntary. And it is judgmental in a sense. In what sense was it involuntary? Pardon me? In what sense was it involuntary? This is not an involuntary consent case. I'm just trying to tell you this. You mean inaccurate or incomplete? This is an uninformed consent case. It's uninformed because, one, they didn't make disclosures in the first instance like they should have, including the risks to the mother. But they also made misrepresentations. When there was pointed questions asked of them, they made statements that were false, that she relied on, to her detriment. And she lost a child that she otherwise would not have lost. And she suffered psychological harm she otherwise would not have suffered. But to the extent that it's a judgment as to whether it's true or false that this kills a human being, yes. It's a judgment that has to be made by the trier of fact. Now, if this court were to say that as a matter of law, we will say as a matter of law that an abortion does not kill a human being, that's not a question of fact, on what are you going to base that? And what you would be saying is that you think that the Eighth Circuit, when it dealt with it as a question of fact, actually was wrong as a matter of fact. You would be saying that Alexander, that the Third Circuit, and Alexander that said that accepted the statement that this was a human being, is wrong when they accept it because it's a well-pleaded fact in the complaint. You'd actually be disagreeing with those courts, and you'd be taking what the court did below as they took a question of fact, converted it to a question of law. You served the function of the trier of fact. Help me out here. When you characterize it as a question of fact, I'm not sure where questions of fact would end. What is a question of fact and what isn't a question of fact, or when can we agree on a question of law? And I don't mean to say that it's a law, that this is the law. I mean to say that we apply existing law, and if we can't find a law that says that a fetus on the point of conception is a human being. You have in your state a fetal homicide statute that criminalizes the killing of an unborn child at any time after conception. You have a wrongful death statute that refers to the unborn child as a human being. What's the exception in the wrongful death statute? The exception? Well, we know what the exception is. I'm asking you to tell us what the exception is. And if I may, when I allude to it, may I also allude to the language in your fetal homicide statute? Because the language is different and it has a meaning. Certainly. These differences in the fetal homicide statute, it simply says that she has a consent, that there's a consent. In the wrongful death, as the Mercado case suggests, the language is quite different. The language is that it is a requisite consent lawfully given. Now, we all know, and we don't need to cite cases of this, that there's a difference between a battery. In civil law, if a physician got no consent, it's a battery. And if the person died, it would be a wrongful death claim. If there is a signature on a piece of paper, it's not a battery or a crime, but it's still subject to the concepts of negligence, the negligent concept of whether it was properly obtained was a negligence or not. This language matters. In your homicide statute, what it specifically says is a consent, meaning a signature on a piece of paper, and there can't be any criminal liability. And the abortion absolutely positively is legal. Not only is it legal, it's protected by the United States Constitution and state constitutions in many instances. However, that does not mean that it's not subject to civil liability when there's negligence that results in the harm. That language matters, and it has no meaning whatsoever if there is a statement that absolutely induces a woman to sign a consent that she otherwise wouldn't consign, and this woman telling you it mattered to her. But what happened here... How did it matter to her? I don't understand because... How did that matter to her? Because she certainly knew the nature of the procedure. She knew that six months down the line... Your Honor, with all due respect, I disagree. She did not know the nature of the procedure. She knew that at some point there's going to be a human being. She did not know that at this point there was a human being. And if you look at the science that we put in the record... No, let me ask you this question. Let me ask you this question. Under your presentation, when can an abortion occur without the disclosure that you're urging us to find? I only have to look to your homicide statute. If you kill an unborn child at any age, you're killing a human being by definition under your statute. I'm asking you if the person was able to confirm that she was pregnant one week after having unprotected sex. If that were possible. If that were possible. Could she go to an abortion... Could she go to a clinic and stop the abortion? All right. The answer... What do you mean? Would he be liable by not making... No, I'm not asking about liability. Under your urging of what is... Of course she can't have an abortion. First of all, it's a practical matter. Until the embryo implants, you're not going to be able to test positive. But put that aside. Hypothetically, let's pretend that you can anyway. The answer is she can have an abortion. The answer is it's perfectly legal. The answer is it's constitutionally protected. I'm asking you, under the question that you say that really motivated her... Yes. ...that she had a human being inside of her. When does that human being come into existence? Is it on possession? That's a question of fact for a fact finder after this proper scientific presentation. So let me ask you this. It goes to a jury... And it's not relevant in this case. Let's say it goes to a jury, and one jury says one day. Another jury can say two weeks. Another jury can say a month. Another jury can say three months. Now, does that seem like a way that we should be running our civil justice system? You're asking a very complicated question that, if I can rephrase it, it sounds rather presumptuous of me to do that. But the question is, at what point and under what circumstances do we convert a pure question of fact into what we call a constitutional fact? That has not been done by the courts. The closest thing that's been done by that is the Eighth Circuit. So the question is, but to the point, this plaintiff is entitled to prove her case. She has world-class experts that are providing not just opinions but will be referencing all the scientific studies, journals, texts, everything, and multi-disciplines, human genetics, molecular biologists. Bruce Corsel. We understand. And it's all laid out in your brief, and ably so, Mr. Gasset. I will ask you to wrap up, and then you'll have rebuttal time. Okay. Of course, there are other issues. But I take the lead from the court as to what the court's interested in. So the only thing, the way that I'd wrap up is to say that we must focus on what this woman, that the Supreme Court has said it's her right, that the Supreme Court said it doesn't matter what anybody else thinks. She's the one who has to live with the decision, nobody else, not the physician, not the defendants, nobody else. What is it that she was asking? And is there really a difference factually in just, as the defendant said, removing nothing but tissue, as opposed to killing a human being? If there is a factual difference between those two, you have to reverse. Thank you. All right. Thank you very much. May it please the Court. Wendy Anderson on behalf of the defendants. The trial court's decision must be affirmed. The trial court correctly found as a matter of law that abortion providers Why is it a matter of law as opposed to a matter of fact? Can we simply say that factual questions are present and we should allow the trier fact to resolve those questions? Absolutely not. Doctors cannot be at risk about the findings of any What about the corporation? Do they have a duty here? To Ms. Dill? Planned Parenthood. Planned Parenthood as a provider. Do they have a duty independent from that of the doctor? No, they do not. Their duty is the same as the duty of the physician, the surgeon. It's the same? Yes, it is. And the law in the state of Illinois is that the question of whether a duty exists, but whether a duty exists is a question of law for the court to decide. The courts cannot impose a duty on physicians to disclose non-medical Leave the physician out of it for a moment. Just concentrate on the fact that you went to the Planned Parenthood facility. Okay. And Planned Parenthood as a facility provided plaintiff with the necessary disclosures under Illinois common law of informed consent. That's what I want to focus on for a moment. I want to focus on that. Leave the doctor out for a moment. Let's just assume for the moment that the doctor is under no obligation beyond what he did in this case. But focus on Planned Parenthood. Do they have any additional duties? No, but Planned Parenthood's duties are the same of those that are imposed on a physician. To disclose to their patients material medical risks associated with a procedure. Those foreseeable medical risks resulting from a surgical procedure. The results of that procedure and the alternatives to that procedure. They have no duty at all to inform an ignorant woman. Let's not say Mary Doe. Let's just say someone less sophisticated than Ms. Doe. Okay. Well, we Does their obligation to Ms. Doe different from their obligation to somebody other than Ms. Doe who may be really ignorant of what's going on in their body? Planned Parenthood and any other abortion provider does have a duty to make sure that the patient understands the nature of thing. The thing being consented to. Okay. And here there is absolutely no evidence whatsoever that Mary Doe or any other putative class member, plaintiff purports to bring this as a class action, did not understand the nature of the thing being consented to. Mary Doe does not even allege that she was incompetent or did not understand that what she was consenting to was a lawful abortion. And that that abortion would terminate her pregnancy. She acknowledged that Planned Parenthood provided to her the required disclosures under Illinois common law. The foreseeable risks associated with the procedure. The results on the alternatives. She acknowledged that by So Planned Parenthood was under no obligation to inform her of the question that she was asking? That is correct. The question that she was asking well exceeds the boundaries of a physician's duties. Would she Forget about physician. I'm just talking now about Planned Parenthood as the sponsoring organization. I understand that. I apologize. And her required disclosures, what she seeks to impose on a provider, on Planned Parenthood as an institution, exceeds the boundaries. Let me ask you this regarding that question that was asked, she asked, of the person that was not a physician. What if that answer had been in the disclosure form itself? That in fact the procedure would involve the removal of tissue that was not yet a human being? Would that disclosure on the consent form address the issue raised by the plaintiffs? Not necessarily. Because the question is whether a physician or abortion provider has this duty to disclose these non-material value-laden information. And if such a disclosure is provided, well, then Mary Doe simply could not claim that defendants failed to make that disclosure. But even if you accept The question seems to me whether there was an obligation to make that disclosure. I'm not sure where the duty would arise to make that disclosure. There is no duty to make that disclosure. There are cases. How do we deal with the Rounds case? Well, the Rounds case was a statute. And the Rounds case provided that the statute at issue did not codify the then existing common law. In fact, Section 7 of the statute at issue in Rounds provided that in addition So you're saying it's a modification of common law or an addition to common law rather than a codification of common law? It's a legislatively enacted statute that extends the common law, that pushes the common law, and is outside what is required under the common law. It was not part of the then existing common law of South Dakota. I meant to ask this of Mr. Cassidy, and I'm sure he'll answer when he gets the opportunity. I get a sense that his position is that the decision in Rounds, the holding in Rounds, should be grafted onto existing common law in Illinois. That the holding there, we should adopt as common law here. Is that your understanding of their position as well? That is our understanding of the plaintiff's position. And is there another case that, is there a case out there that found the common law in the absence of a statute from the legislature addressing that factual question? There are no cases in Illinois or any other state which have found that as a matter of common law, physicians and abortion providers have a duty to disclose when life begins. There is the New Jersey Supreme Court's decision in Acuna, which is directly on point and highly instructive. The court there, the issue before the court there was whether the common law of New Jersey, which is virtually identical to that of Illinois, requires physicians to disclose to their patient that an abortion would result in the killing of a live, separate human being as a matter of biological and scientific fact. Finding that there was no consensus within the medical or scientific community as to when life begins, the court declined to extend the common law and found that the common law, like that of Illinois, only requires a physician to disclose those foreseeable medical risks associated with a procedure. The disclosures that plaintiffs seek to compel here are non-material medical information. It is value-laden information that has been the subject of great debate. It is moral, theological, and religious information. I understand everything you're saying, but I want to concentrate. Now let's go back to Mary Doe. Did she or did she not ask the provider, the counselor, whether or not there was a human being in her body? Based on the allegations of the complaint, which we must accept as true on a 2615 motion, she did ask Planned Parenthood. And what was the answer? Planned Parenthood, according to the allegations of the complaint, told her that there was only tissue being evacuated from her body at that time. And you think that was accurate under Illinois law? I think that... To say it was only tissue. What I think is not relevant here... Under Illinois law, was it relevant? I mean, what she told her, was that all she was required to do under Illinois law? Illinois law requires that the patient provide requisite consent to an abortion. Here's another question. I'd like an answer to that. I thought she answered it. No, she didn't. Under Illinois law, does Illinois law answer the question whether there was a human being present in her body when she went into Planned Parenthood? No, Illinois law does not. So if Illinois law doesn't answer that question, how does Illinois law impose the obligation to answer that question in a way that the plaintiffs contend is an accurate answer? I mean, it could have been, I don't know. What if she had said, I don't know. But here's the procedure. We're going to evacuate tissue. I don't know whether there's a human being there or not. Maybe you should talk to a priest, maybe you should talk to someone else, but I don't know. What if she had said, I don't know. I mean, why should the fact that she said no, contradicting what the information that she had received previously, why should that make a difference? It makes a difference because it's simply just not required of a physician's duty or an abortion provider's duty. But you didn't answer her question. Planned Parenthood did answer her question. Her specific question was, do I have a human being inside of me? Because there is simply no consensus within the medical community as to when life begins. Right, but they didn't say that. They just said no, according to the complaint. Fatal to Plaintiff's complaint is that she possessed the very information that she claims defendants should have disclosed to her. It exceeds all boundaries. That may be. That may be. But why wouldn't an appropriate answer then be, I can't answer that question, rather than no. Even if you accept the allegations as true, it is simply not the type of information or disclosures that an abortion provider must make to its patients. So they're under no obligation to answer the question that she most wanted answered. Physicians are under no obligation under the law, under the Congress. They're also under no obligation to perform the abortion on a person who hasn't given consent. And this court has defined requisite consent in Mercado. And this court held that requisite consent is an understanding of the nature of the theory of abortion. And that Mary Doe indisputably gave. Mary Doe consented to the termination of her pregnancy. She knew she was ending the life of the developing child within her. She stated to Planned Parenthood she was confident in her decision and she was not ready to be a parent. That Mary Doe now later regrets her decision and now claims She said in part based on the fact that the counselor told her in response to her question, am I carrying a human being in my body? The answer was no. No, Mary Doe's, Mary Doe's, the allegations in the complaint are that defendants did not disclose to her as to when life begins, that abortion would kill a separate live human being. Her claims are not based on the, what Planned Parenthood did or did not tell her. Sure they are. Sure they are. That's what the complaint is asserting. That is correct. I apologize. I misspoke. Her claims are directly related to what Planned Parenthood did not disclose to her. Right. And Planned Parenthood was under no obligation to disclose that. But were you under any obligation not to mislead her? Planned Parenthood is under the obligation to provide truthful information. Right. There is no consensus as to when life begins. It's a moral, theological, privilegious issue. Is the no answer standing alone? Free of any possible interpretation that the patient might make? That's actionable. The no answer is. The no answer. That's what I'm concentrating on. The no answer is not sufficient to maintain the claims asserted in plaintiff's complaint. Is it sufficient? The plaintiff doesn't even have an informed consent claim in her complaint. So you're not misleading her when you say no to the question, am I carrying a human being in my body? Absolutely not. Planned Parenthood did not mislead Mary Jo. Planned Parenthood provided Mary Jo with the required information under Illinois informed consent law. Are you telling us that reasonable physicians could disagree when life begins? Is that what you're telling me? Physicians, yes, can disagree about when life begins. This has been the subject of great debate for centuries. If that is the case, then shouldn't they tell the patient that there is a disagreement as to when life begins? Didn't she already have that information? She did have that very same information. Well, why is she saying no when she asked the specific question? I can understand why she might have said to her, for example, it's not our job to answer that question for you. Okay? Then I think you're off the hook. And perhaps that would have been the better answer, but the answer no is still not legally cognizable to maintain a claim. Isn't it difficult to even connect the no with the procedure that happened the very same day, given that she already had the yes answer, for her to go in there and get a no answer and then agree to the procedure that very same day as opposed to saying, you know, I'll think about it or I'll come back. Exactly. It seems pretty unreasonable. But plaintiff possessed the very information she claims defendant should have disclosed or misrepresented. Was no misleading or not? No, it was not misleading. There is simply no legitimacy. You have to take that decision. If the court does not have any questions regarding the other claims alleged in plaintiff's complaint. Well, I thought Justice Cahill's original point went to the consumer fraud claim as well. That's why he separated the corporation from the doctors. Oh, that was part of it, yeah. And you indicated that there is no authority to separate a corporation from the nature of the underlying cause of action against the doctors. Well, as this court has found, the Illinois Consumer Fraud Act does not apply to the practice of medicine or the provision of medical services. And you can't separate the question from the actual procedure that was undertaken. So that the consumer fraud claim can't stand. The consumer fraud act simply cannot stand. Neither can plaintiff's claim under negligent infliction of emotional distress. But that's because you're linking Planned Parenthood to the doctor. Planned Parenthood and the physicians are under an extensive set of regulations. We know about the doctor, but are we sure about Planned Parenthood? The Northern District of Illinois' decision in Ragsdale, which affirmed a consent decree, provided, or that consent decree provides an extensive array of regulations which govern abortion providers. Providers, not just physicians themselves. And therefore, under this court's rulings, the practice of medicine and the provision of abortion services simply does not fall within the ambit of the Illinois Consumer Fraud Act. Would your physician be any different had she not gone to the prior pregnancy health center and gotten the different answer? Absolutely not. Because physicians are simply not required to disclose this non-medical value-laden information about when life begins. What about the non-physician who first greets her at Planned Parenthood? That is simply an agent of the surgeon. She's an agent of the surgeon. It is commonplace for patients to meet with a nurse or a counselor. I wonder if the surgeon would appreciate that characterization. We don't know. You'll have to wrap up. This court should affirm the trial court's ruling that the complaint on its face fails to state legally cognizable claims as a matter of Illinois law, the common law duty of informed consent. Thank you. All right. Thank you very much. Mr. Cassidy, a brief rebuttal? Yes. I have four points. I'll try to do it in a few minutes, but I don't know if I'm going to make it. Number one, defendants claiming they have a right, an absolute right, to make misrepresentations. There's two distinctions here that has to be examined. Counsel claims that the no is not a misrepresentation. Well. Because she has to take that position. Yes, but I'll address that in one second. But here's a point that I think has to be considered. We have the expert who says it is within the profession they would make these disclosures, even if there's no questions about them. That's number one. When you get to the area where someone, a woman, especially in this context, asks the question that says, for me, for me, this is critical. I wish you'd answer this question. She has an absolute right to rely on what the physician said. In fact, in the record here, what's clear is she's saying, don't believe a word that you hear at a pregnancy health center. They lie. They don't know what they're talking about. We have the doctors. We're superior. You can rely on what we say, and you should ignore what they have to say. That's in this record. That was specifically said. She has a right to rely on it. They insisted that she rely on it. That's number one. Number two. Mr. Cassidy, let me ask you one brief question, and that concerns the evolution of Mary Doe. Yes. Mary Doe, on the date of her visit to Planned Parenthood, to quote Justice Cahill, may have been ignorant of certain things going on in her body. She did not. Two years later, on the two-year anniversary, this complaint is filed. So you would think that during those two years she gained knowledge. Yes, she did. That she didn't have prior to her visit to Planned Parenthood. Absolutely. And you wonder where that knowledge came from and why that knowledge wasn't available to her before she went to Planned Parenthood. When she went to Planned Parenthood, Planned Parenthood specifically told her to ignore what she was told in another location and that we are superior in terms of our knowledge. You can rely on us. We have the doctors. They don't. We have the science. They're talking nothing but nonsense and religion. That's what she was told. As to her credibility, that's an issue for the finding of the Trier effect, and that will be developed as to what happened in the interim when she gained the knowledge and realized she was lied to. What was it that happened in her life when she recognized the fact she was lied to and it mattered to her? But the point I'm making is, in the first instance, it's a question of fact of whether the doctor has a duty to disclose even if unasked, but clearly when she asks, especially in this context, they can't just leave her, number one. Number two, there was a question about the statute in South Dakota, what was being clarified, what was in addition to. The language of the statute says this is a clarification of our common law, and in addition. The addition was the legal disclosures. If you look at that statute, there's very specific legal disclosures. The legislature was concerned about the fact there was a fundamental constitutional right of a mother to a relationship that was lost, and they included in that statute a requirement that there be a disclosure about that. Your Honor, Justice Garcia, we're not saying that the statute in South Dakota expands common law in Illinois. The relevance of that case is that it specifically is addressing the question, and this is important. The defense keeps talking about when does life begin, when does life begin, this metaphysical, philosophical, theological question. What the Eighth Circuit said is look, the fact question of whether as a matter of scientific fact this is a member of the species, a human being, is one thing quite separate and apart from the value judgment about whether as a culture we are going to attribute to this particular human being a life that has the same value as all other human beings. Two separate questions. She didn't go into Planned Parenthood to ask for theology and philosophy. She went in there because she wanted to know what the facts were, and there's a distinction. One last thing, if the Court permits. Please. Yeah. The business about ACUNA, that the law in New Jersey is the same as here, is just absolutely absurd. Number one, that is a reasonable patient jurisdiction. This is not. Number two, the Court made a specific point of saying we don't recognize the unborn child as a human being in law here because we don't have wrongful death statutes. You do. We don't have fetal homicides. Illinois does. But more importantly, this business about the Court saying, well, there's no consensus about when life begins. And they cited to, and this is my last point, if the Court will permit, and they cited to the record saying, well, you know, the plaintiff has some experts to say one thing, the defendant has experts to say the other. Well, that's what trials are for. But what was really particularly offensive and why this Court can't really take that decision seriously, the only case I ever lost in front of that Court, by the way, is this. They had two experts. They had two experts. And one expert. I don't think we needed that little aside. I'm sorry, Your Honor. You're right. You're a lawyer. You're excused. Okay. They had two experts. One expert said it's not a human being because Supreme Court says you can kill this, but then asked what if the Supreme Court says that you can't have abortion. It says, well, then it is a human being. And the other expert, Lee Silver, who was a molecular biologist, announced in a subsequent case in South Dakota that he was wrong in Acuna. He had what he admitted was a philosophical view about sentience. And then he says, I no longer have an opinion. My thinking is in a state of flux. That is an offensive record for any Court to rely on. All right. I won't make that error here, I ask. Thank you. All right. Thank you very much. Thank you very much.